# UNITED STATES DISTRICT COURT

for the

Southern District of California

**FILED**

SEP 2 7 2019

CLERK US DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY _____ DEPUTY

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br><br>LG Cellular Phone<br>IMEI No. 355868060566248<br>Seized as FP&F No. 2019250600117501 | )<br>)<br>)<br>)<br>)<br>)<br> Case No.  '19 MJ 4192 |

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A, incorporated by reference.

located in the _____ Southern _____ District of _____ California _____ , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B, incorporated by reference.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☐ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. § 952, 960, 963 | Importation of Methamphetamine, Conspiracy |

The application is based on these facts:
See attached affidavit of HSI Special Agent Steven R. Merklein.

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Steven R. Merklein, Special Agent
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 9/27/2019

_____
*Judge's signature*

City and state: San Diego, California          F.A. Gossett, United States Magistrate Judge
                                                *Printed name and title*

**AFFIDAVIT**

I, Special Agent Steven R. Merklein, being duly sworn, hereby state as follows:

**INTRODUCTION**

1.     I submit this affidavit in support of an application for a warrant to search the following electronic device:

> LG Cellular Phone
>
> IMEI No. 355868060566248
>
> Seized as FP&F No. 2019250600117501
>
> ("**Target Device**")

as further described in Attachment A, and to seize evidence of crimes, specifically violations of Title 21, United States Code, Section(s) 952, 960, and 963, as further described in Attachment B.

2.     The requested warrant relates to the investigation and prosecution of Alejandro PEDRERO-GOMEZ ("PEDRERO-GOMEZ") for importing approximately 22.16 kilograms (48.85 pounds) of methamphetamine from Mexico into the United States. *See U.S. v. Perdero Gomez*, Case No. 19-mj-4005-WVG (S.D. Cal.) at ECF No. 1 (Complaint). The **Target Device** was seized from PEDRERO-GOMEZ at the time of his arrest, has been securely stored since that time, and is currently in the evidence vault located at 9495 Customhouse Plaza, San Diego, CA 92154.

3.     The information contained in this affidavit is based upon my training, experience, investigation, and consultation with other members of law enforcement. Because this affidavit is made for the limited purpose of obtaining a search warrant for the **Target Device**, it does not contain all the information known by me or other agents regarding this investigation.  All dates and times described are approximate.

**BACKGROUND**

4.     I am a special agent employed by the Department of Homeland Security (DHS), Immigration and Customs Enforcement (ICE), Homeland Security Investigations (HSI).  I have been employed as a special agent since November of 2018, whereby I am an

1

investigative or law enforcement officer within the meaning of Title 18, United States Code, Section 2510(7); that is, an officer of the United States, who is empowered by law to conduct investigations of and to make arrests for offenses enumerated in Title 18, United States Code, Section 2516. Prior to joining HSI, I was employed as a United States Border Patrol Agent (USBP). While employed as a Border Patrol Agent I served as a Task Force Officer (TFO) on a Drug Enforcement Administration (DEA) Narcotics Task Force and worked on both sector and station level intelligence & abatement teams. I also previously served in the United States Army from 1998 to 2004, serving as an infantry Non-Commissioned Officer. I received an Associates of Science in Criminal Justice degree from Springfield Technical Community College in 2002.

5.   During my employment as a border patrol agent and work as a TFO, I've conducted criminal investigations for multiple violations of federal and state laws including, but not limited to alien smuggling, narcotics smuggling, and organized criminal activity. I have conducted and/or assisted in more than 50 investigations involving controlled substances. I have participated in several controlled purchases of narcotics with the use of confidential informants ("CIs") and I have personally conducted hand-to-hand drug transactions while operating in an undercover capacity. I have authored and/or participated in the execution of narcotic-related arrests and search warrants for violations involving controlled substances, including heroin, methamphetamine, cocaine, ecstasy, LSD, marijuana, and pharmaceuticals. Through these investigations, I have gained extensive knowledge from users of narcotics, sellers of narcotics, CIs and veteran narcotics detectives regarding the manner in which narcotics are sold, distributed, transported, stored, concealed and ingested.

6.   In addition to my experience, I have received multiple formal trainings related to conducting controlled substance investigations. These courses primarily focused on the identification of controlled substances, case management/development, managing CIs, tactical street operations, undercover operations, surveillance operations, highway interdiction, hidden compartments and various methods of drug trafficking and human

2

smuggling. In addition to these courses, I was previously certified by the California Attorney General to conduct wiretaps as authorized in California Penal Code Section 629.50 *et seq*.

7. Through my training, experience, and conversations with other members of law enforcement, I have gained a working knowledge of the operational habits of narcotics traffickers, in particular those who attempt to import narcotics into the United States from Mexico at Ports of Entry. I am aware that it is common practice for narcotics smugglers to work in concert with other individuals and to do so by utilizing cellular telephones. Because they are mobile, the use of cellular telephones permits narcotics traffickers to easily carry out various tasks related to their trafficking activities, including, *e.g.*, remotely monitoring the progress of their contraband while it is in transit, providing instructions to drug couriers, warning accomplices about law enforcement activity, and communicating with co-conspirators who are transporting narcotics and/or proceeds from narcotics sales.

8. Based upon my training, experience, and consultations with law enforcement officers experienced in narcotics trafficking investigations, and all the facts and opinions set forth in this affidavit, I know that cellular telephones (including their Subscriber Identity Module (SIM) card(s)) can and often do contain electronic evidence, including, for example, phone logs and contacts, voice and text communications, and data, such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data. In particular, in my experience and consultation with law enforcement officers experienced in narcotics trafficking investigations, I am aware that individuals engaged in drug trafficking commonly store photos and videos on their cell phones that reflect or show co-conspirators and associates engaged in drug trafficking, as well as images and videos of drugs or contraband, proceeds and assets from drug trafficking, and communications to and from recruiters and organizers.

/ / /

/ / /

3

9.     This information can be stored within disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular telephone. Specifically, searches of cellular telephones may yield evidence:

a.     tending to indicate efforts to import methamphetamine, or some other federally controlled substance, from Mexico into the United States;

b.     tending to identify accounts, facilities, storage devices, and/or services–such as email addresses, IP addresses, and phone numbers–used to facilitate the importation of methamphetamine, or some other federally controlled substance, from Mexico into the United States;

c.     tending to identify co-conspirators, criminal associates, or others involved in importation of methamphetamine, or some other federally controlled substance, from Mexico into the United States;

d.     tending to identify travel to or presence at locations involved in the importation of methamphetamine, or some other federally controlled substance, from Mexico into the United States, such as stash houses, load houses, or delivery points;

e.     tending to identify the user of, or persons with control over or access to, the **Target Device**; and/or

f.     tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above.

## FACTS SUPPORTING PROBABLE CAUSE

10.     On September 17, 2019, at approximately 5:00 p.m., PEDRERO-GOMEZ applied for permission to enter the United States at the Otay Mesa Port of Entry. Defendant was the driver and sole occupant of a Cadillac Escalade bearing California license plates. A Narcotics and Human Detection Dog alerted to a spare tire located in the undercarriage of the vehicle in pre-primary. PEDRERO-GOMEZ then told a Customs and Border Protection ("CBP") Officer that he was going to "San Diego" and provided two negative customs declarations. PEDRERO-GOMEZ was asked to exit the vehicle. A Z-Portal examination of the vehicle revealed anomalies in the spare tire under the vehicle, from

4

which 45 packages were removed.  The 45 packages were wrapped in cellophane and grease and had a total weight of 22.16 kilograms; one package field-tested positive for methamphetamine.

11.   PEDRERO-GOMEZ was advised of his *Miranda* rights and elected to answer questions without an attorney present.  He also provided written consent to search his cellular phone, the **Target Device**.[1]   PEDRERO-GOMEZ denied knowledge of the methamphetamine that was seized from the spare tire and explained that he (1) buys car parts in the United States, (2) takes them to Mexico to be reinforced, and (3) then sells the car parts in the United States.  According to PEDRERO-GOMEZ, Kelly Mauricio Serrano (the registered owner of the vehicle) is his boss for moving these car parts, has a Facebook profile under the name of "Fausto Serboni," and is saved as "Faustos" in the **Target Device**.  PEDRERO-GOMEZ stated that on the Saturday preceding his Tuesday arrest, he gave Mauricio $4,000 and told him the vehicle needed a spare.  PEDRERO-GOMEZ identified another individual named "Mario"; according to PEDRERO-GOMEZ, he works as a mechanic at Mario's shop, and Mario permits PEDRERO-GOMEZ to store car parts at his mechanic's shop.

12.   Based upon my experience and investigation in this case, I believe that the **Target Device** contains evidence of violations of Title 21, United States Code, Sections 952, 960, and 963.  Specifically, I believe that PEDRERO-GOMEZ, "Mario," and "Fausto," and other persons as yet unknown, were involved in an ongoing conspiracy to import methamphetamine or other federally controlled substances into the United States. Based on my experience investigating narcotics smugglers, I also believe that PEDRERO-GOMEZ may have used the **Target Device** to coordinate with co-conspirators regarding the importation and distribution of controlled substances, and to otherwise further this

[1] Agents were unable to complete a forensic download of the **Target Device** prior to PEDRERO-GOMEZ being appointed counsel.  While appointed counsel has not yet communicated a termination of PEDRERO-GOMEZ's written consent, this warrant is sought in an abundance of caution and to moot a subsequent challenge to the validity of PEDRERO-GOMEZ's consent or the effective date of revocation of consent.

1  conspiracy both inside and outside of the United States.

2      13.    In my training and experience, narcotics traffickers may be involved in the
3  planning and coordination of a drug smuggling event in the days and weeks prior to an
4  event. Co-conspirators are also often unaware of a defendant's arrest and will continue to
5  attempt to communicate with a defendant after their arrest to determine the whereabouts of
6  the narcotics. Based on my training and experience, it is also not unusual for individuals to
7  attempt to minimize the amount of time they were involved in their smuggling activities,
8  and for the individuals to be involved for weeks and months longer than they claim.  Given
9  this, and TECS records indicating PEDRERO-GOMEZ entered the United States in the
10  vehicle registered to "Faustos" more than 25 times in the two months preceding his arrest,
11  I respectfully request permission to search the **Target Device** for data from July 18, 2019
12  through September 18, 2019, which was the day following PEDRERO-GOMEZ's arrest.

13                              **METHODOLOGY**

14      14.    It is not possible to determine, merely by knowing the cellular telephone's
15  make, model and serial number, the nature and types of services to which the device is
16  subscribed and the nature of the data stored on the device. Cellular devices today can be
17  simple cellular telephones and text message devices, can include cameras, can serve as
18  personal digital assistants and have functions such as calendars and full address books and
19  can be mini-computers allowing for electronic mail services, web services and rudimentary
20  word processing. An increasing number of cellular service providers now allow for their
21  subscribers to access their device over the internet and remotely destroy all of the data
22  contained on the device. For that reason, the device may only be powered in a secure
23  environment or, if possible, started in "flight mode" which disables access to the network.
24  Unlike typical computers, many cellular telephones do not have hard drives or hard drive
25  equivalents and store information in volatile memory within the device or in memory cards
26  inserted into the device. Current technology provides some solutions for acquiring some of
27  the data stored in some cellular telephone models using forensic hardware and software.
28  Even if some of the stored information on the device may be acquired forensically, not all

1  of the data subject to seizure may be so acquired. For devices that are not subject to forensic
2  data acquisition or that have potentially relevant data stored that is not subject to such
3  acquisition, the examiner must inspect the device manually and record the process and the
4  results using digital photography. This process is time and labor intensive and may take
5  weeks or longer.

6      15.    Following the issuance of this warrant, I will collect the subject cellular
7  telephone and subject it to analysis. All forensic analysis of the data contained within the
8  telephone and its memory cards will employ search protocols directed exclusively to the
9  identification and extraction of data within the scope of this warrant.

10     16.    Based on the foregoing, identifying and extracting data subject to seizure
11 pursuant to this warrant may require a range of data analysis techniques, including manual
12 review, and, consequently, may take weeks or months. The personnel conducting the
13 identification and extraction of data will complete the analysis within 90 days, absent
14 further application to this court.

15                    **PRIOR ATTEMPTS TO OBTAIN THIS EVIDENCE**

16     17.    Law enforcement has not previously attempted to obtain the evidence sought
17 by this warrant.

18                              **CONCLUSION**

19     18.    Based on the facts and information set forth above, there is probable cause to
20 believe that a search of the **Target Device** will yield evidence of PEDRERO-GOMEZ's
21 violations of Title 21, United States Code, Sections 952, 960, and 963.

22     19.    Because the **Target Device** was seized at the time of PEDRERO-GOMEZ's
23 arrest and has been securely stored since that time, there is probable cause to believe that
24 such evidence continues to exist on the **Target Device**. As stated above, I believe that the
25 appropriate date range for this search is from July 18, 2019 through September 18, 2019.

26 / / /
27 / / /
28 / / /

7

20.     Accordingly, I request that the Court issue a warrant authorizing law enforcement to search the item described in Attachment A and seize the items listed in Attachment B using the above-described methodology.

I swear the foregoing is true and correct to the best of my knowledge and belief.

_____
Special Agent Steven R. Merklein
Homeland Security Investigations

Subscribed and sworn to before me this ____27____ day of September, 2019.

_____
Hon. F.A. Gossett
United States Magistrate Judge

8

## ATTACHMENT A

PROPERTY TO BE SEARCHED

The following property is to be searched:

LG Cellular Phone
IMEI No. 355868060566248
Seized as FP&F No. 2019250600117501
("**Target Device**")

The **Target Device** is currently in the possession of Homeland Security
Investigations, 9495 Customhouse Plaza, San Diego, CA 92154.

# ATTACHMENT B

## ITEMS TO BE SEIZED

Authorization to search the cellular telephone described in Attachment A includes the search of disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular telephone for evidence described below. The seizure and search of the cellular telephone shall follow the search methodology described in the affidavit submitted in support of the warrant.

The evidence to be seized from the cellular telephone will be electronic records, communications, and data such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data, for the period from July 18, 2019 through September 18, 2019:

a.   tending to indicate efforts to import methamphetamine, or some other federally controlled substance, from Mexico into the United States;

b.   tending to identify accounts, facilities, storage devices, and/or services–such as email addresses, IP addresses, and phone numbers–used to facilitate the importation of methamphetamine, or some other federally controlled substance, from Mexico into the United States;

c.   tending to identify co-conspirators, criminal associates, or others involved in importation of methamphetamine, or some other federally controlled substance, from Mexico into the United States;

d.   tending to identify travel to or presence at locations involved in the importation of methamphetamine, or some other federally controlled substance, from Mexico into the United States, such as stash houses, load houses, or delivery points;

e.   tending to identify the user of, or persons with control over or access to, the **Target Device**; and/or

f.   tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above;

which are evidence of violations of Title 21, United States Code, Sections 952, 960, and 963.